## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **CLINT BOWERS,**<br>　　Address:<br>　　10813 West 128th Place<br>　　Overland Park, Kansas 66213<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**NETSMART TECHNOLOGIES, INC.,**<br>**D/B/A NETSMART**<br>　　Serve at:<br>　　Registered Agent<br>　　The Corporation Company, Inc.<br>　　1127 S.W. 7th Street, Suite 3C<br>　　Topeka, Kansas 66603<br><br>　　**Defendant.** | **Case No. 2:19-CV-2585**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Clint Bowers, by and through his undersigned counsel, and for his Complaint against Netsmart Technologies, Inc., doing business as Netsmart (hereinafter "Defendant") states and alleges as follows:

## PARTIES

1.　　Mr. Bowers is a citizen of the United States, presently residing in Johnson County, Kansas.

2.　　At all times relevant to this action, Mr. Bowers was employed by Defendant.

3.　　Defendant is a limited liability company, organized under the laws of Delaware, with its principle place of business located in Overland Park, Johnson County, Kansas.

4.　　At all times relevant to this action, Defendant was authorized to conduct business in Kansas and was doing business in Kansas.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendant because it conducts business in Kansas and because Mr. Bowers's alleged injuries arise out of Defendant's business operations in Kansas.

6. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because this Complaint arises under federal law.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Mr. Bowers's claims occurred within this Court's territorial jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about March 19, 2019, Mr. Bowers filed a Charge of Discrimination ("Charge") against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9. On July 10, 2019, the EEOC issued Mr. Bowers a Notice of Right to Sue with respect to the Charge, and this lawsuit was filed within 90 days of the issuance of the Notice of Right to Sue.

10. The aforesaid Charge, and any amendments made thereto, provided the EEOC with an opportunity to investigate the full scope of the controversy between the parties.

11. Mr. Bowers has satisfied all prerequisites to the institution of this action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. Paragraphs 1 through 11 above are incorporated herein by reference.

13. Mr. Bowers is a Type 1 Diabetic, and shortly before Thanksgiving, 2018, Mr. Bowers suffered from a heart attack which required the surgical implant of two (2) stints and a balloon in his heart.

14. Defendant was aware of Mr. Bowers's medical conditions.

15. Mr. Bowers was hired by Defendant in November, 2016, to be a Senior Engineer.

16. Mr. Bowers was employed by Defendant at Defendant's headquarters in Overland Park, Kansas.

17. After Mr. Bowers's first year of employment with Defendant, Mr. Bowers was promoted to the position of Solutions Architect, but was not formally provided the title.

18. Throughout the course of Mr. Bowers's employment with Defendant, Mr. Bowers was a more than satisfactory performing employee, and received regular above-average performance evaluations.

19. During his final annual review in 2019, Mr. Bowers was informed by his supervisor, John Spoonemore, that he would be receiving a four percent (4%) raise (out of a total possible raise of five percent (5%)) and would officially receive the title of Solutions Architect.

20. During his final annual review, Mr. Bowers was not informed of any deficiencies in his work performance.

21. Two (2) weeks after Mr. Bowers's heart attack, he had another heart episode while at work. Mr. Bowers missed the next day of work, although he attempted to work remotely.

22. After speaking with Mr. Spoonemore and Cari Stammler in Human Resources, Mr. Bowers was informed that he could take off as much time as needed, however Mr. Bowers returned to work the following Monday.

23. As a result of the heart attack and subsequent episode, Mr. Bowers was prescribed numerous different medications. These medications caused Mr. Bowers to have difficulty sleeping. Over the course of December 2018, Mr. Bowers had conversations with Mr. Spoonemore regarding the effects that the medications were having, though Mr. Bowers did not

believe it was affecting his work and Mr. Spoonemore did not voice any concerns to Mr. Bowers regarding his work performance.

24. Then, on or about Monday, January 28, 2019, Mr. Bowers had another face-to-face meeting with Mr. Spoonemore. Mr. Bowers had come to the realization that his lack of sleep may have been making him too direct with his co-workers. Mr. Bowers voiced this realization to Mr. Spoonemore and apologized if that were the case. Mr. Spoonemore told Mr. Bowers that he was "a good guy" and "works hard." Mr. Bowers felt the meeting ended on good terms.

25. Mr. Bowers also attempted to set-up a similar meeting with Ms. Stammler and Tom Gies, the Senior Director in Mr. Bowers's chain-of-command. Although a meeting was scheduled for Tuesday, January 29, 2019, Ms. Stammler cancelled the meeting. No meeting occurred thereafter.

26. Finally, on or about January 31, 2019, Mr. Bowers received a request to come to the corporate office to meet with Mr. Spoonemore, but was provided no reasoning for the meeting. Upon arrival, Mr. Bowers was greeted by Mr. Spoonemore, Ms. Stammler, and Mr. Gies. Mr. Bowers took the opportunity to explain to Ms. Stammler and Mr. Gies the information about his health condition that he wished to provide to them at the previously requested meeting which did not occur; Ms. Stammler and Mr. Gies did not respond. Ms. Stammler then informed Mr. Bowers that Defendant had "decided it was mutually beneficial that [Mr. Bowers and Defendant] part ways."

27. At the time of his discharge, Mr. Bowers was not provided a reason for his termination.

## COUNT I
### Violation of the Americans with Disabilities Act ("ADA")
### Discrimination Based on Disability
### 42 U.S.C. § 12101, *et seq.*

28. Paragraphs 1 through 27 above are incorporated herein by reference.

29. At all times relevant to this action, Defendant was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

30. At all times relevant to this action, Defendant was an "employer" within the meaning of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*.

31. Under the ADA, no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

32. The term "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

33. At all times relevant to this action, Mr. Bowers had a "disability" within the meaning of the ADA due to his Type 1 Diabetes and heart condition.

34. At all times relevant to this action, Mr. Bowers was a "qualified individual" able to perform the essential functions of his job with or without accommodation.

35. Defendant knew of Mr. Bowers's disability.

36. During his employment, Mr. Bowers's co-workers and supervisor(s), while acting within the scope and course of employment, intentionally discriminated against Mr. Bowers with

respect to the terms, conditions, and/or privileges of employment, because of his disability in violation of 42 U.S.C. § 12101, *et seq.*

38. Defendant failed to consider and/or provide reasonable accommodations for Mr. Bowers's disability. Instead, Defendant discharged Mr. Bowers.

37. During his employment, Mr. Bowers sought reasonable accommodation or access to certain benefits from Defendant.

39. Defendant failed to engage in the interactive process to determine whether a reasonable and suitable accommodation existed which would permit Mr. Bowers to perform the essential functions of his position.

40. Mr. Bowers's disability was a motivating factor or determining factor or otherwise played a part in Defendant's decision to take the aforementioned actions against Mr. Bowers.

41. Defendant knew, or should have known, of the discrimination described herein, but failed to take appropriate remedial action.

42. Defendant, through its agents or employees, engaged in discriminatory practices with malice or reckless indifference to Mr. Bowers's federally protected rights. Mr. Bowers is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

43. As a direct and proximate cause of the actions and conduct set forth herein, Mr. Bowers suffers and will continue to suffer damages, emotional distress, and inconvenience.

44. WHEREFORE, Mr. Bowers requests that this Court enter judgment in his favor and against Defendant for such damages, actual, compensatory, and/or punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by

law, and for such other and further legal and equitable relief as may be appropriate to effectuate the purposes of the ADA.

## COUNT II
### Violation of the Americans with Disabilities Act ("ADA")
### Failure to Accommodate
### 42 U.S.C. § 12101, *et seq*.

45. Paragraphs 1 through 44 above are incorporated herein by reference.

46. At all times relevant to this action, Defendant was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

47. At all times relevant to this action, Defendant was an "employer" within the meaning of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*.

48. Under the ADA, no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

49. The term "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

50. At all times relevant to this action, Mr. Bowers had a "disability" within the meaning of the ADA due to Type 1 Diabetes and his heart condition.

51. At all times relevant to this action, Mr. Bowers was a "qualified individual" able to perform the essential functions of his job with or without accommodation.

52. Defendant knew of Mr. Bowers's disability.

53. During his employment, Mr. Bowers's co-workers and supervisor(s), while acting within the scope and course of employment, intentionally discriminated against Mr. Bowers with respect to the terms, conditions, and/or privileges of employment, because of his disability in violation of 42 U.S.C. § 12101, *et seq.*

54. During his employment, Mr. Bowers sought reasonable accommodation or access to certain benefits from Defendant.

55. Defendant failed to consider and/or provide reasonable accommodations for Mr. Bowers's disability. Instead, Defendant discharged Mr. Bowers.

56. Defendant failed to engage in the interactive process to determine whether a reasonable and suitable accommodation existed which would permit Mr. Bowers to perform the essential functions of his position.

57. Mr. Bowers's disability was a motivating factor or determining factor or otherwise played a part in Defendant's decision to take the aforementioned actions against Mr. Bowers.

58. Defendant knew, or should have known, of the discrimination described herein, but failed to take appropriate remedial action.

59. Defendant, through its agents or employees, engaged in discriminatory practices with malice or reckless indifference to Mr. Bowers's federally protected rights. Mr. Bowers is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

60. As a direct and proximate cause of the actions and conduct set forth herein, Mr. Bowers suffers and will continue to suffer damages, emotional distress, and inconvenience.

61. WHEREFORE, Mr. Bowers requests that this Court enter judgment in his favor and against Defendant for such damages, actual, compensatory, and/or punitive, as are fair and

reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as may be appropriate to effectuate the purposes of the ADA.

**COUNT III**
**Violation of the Americans with Disabilities Act ("ADA")**
**Retaliation**
**42 U.S.C. § 12101,** *et seq.*

62. Paragraphs 1 through 61 above are incorporated herein by reference.

63. Mr. Bowers informed Defendant of his disability and the limitations it imposed on his major life activities, initiating the interactive process, and thereby engaged in protected activity pursuant to the ADA, 42 U.S.C. § 12203(a).

64. After Mr. Bowers engaged in protected activity, Defendant retaliated against Mr. Bowers for exercising his statutorily protected rights by adversely altering the terms, conditions, and/or privileges of his employment by terminating his employment.

65. Defendant's actions in terminating Mr. Bowers's employment are actions that a reasonable employee would have found materially adverse.

66. A causal connection exists between Mr. Bowers's protected activities and the adverse actions.

67. The materially adverse actions taken against Mr. Bowers by Defendant occurred within short temporal proximity to Mr. Bowers initiation of the interactive process.

68. As a direct and proximate result of Defendant's actions and/or inactions, Mr. Bowers has been deprived of income, as well as other monetary and non-monetary benefits.

69. Defendant, through its agents or employees, engaged in retaliatory practices with malice or reckless indifference to Mr. Bowers's federally protected rights. Mr. Bowers is therefore

entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

70.     Mr. Bowers is entitled to recover from Defendant his reasonable attorneys' fees and costs.

71.     WHEREFORE, Mr. Bowers requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### **DESIGNATION OF PLACE OF TRIAL**

Mr. Bowers hereby designates the federal court in Kansas City, Kansas, as the place of trial.

### **JURY DEMAND**

Mr. Bowers hereby requests a trial by jury of all triable issues alleged herein.

Dated:  September 26, 2019               Respectfully submitted,

                                         McCLELLAND LAW FIRM
                                         *A Professional Corporation*

                                         By:    /s/ Michael J. Rahmberg
                                                Michael J. Rahmberg, MO Bar #66979
                                                         D. KS Bar #78725
                                                Ryan L. McClelland,  MO Bar #59343
                                                         D. KS Bar #78128
                                                The Flagship Building
                                                200 Westwoods Drive
                                                Liberty, Missouri   64068-1170
                                                Telephone:    (816) 781-0002
                                                Facsimile:     (816) 781-1984
                                                mrahmberg@mcclellandlawfirm.com
                                                ryan@mcclellandlawfirm.com

                                                ATTORNEYS FOR PLAINTIFF